# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 3, 2014

## LAKEITH HUMPHREY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 07-03131     Honorable Lee V. Coffee, Judge**

_____

**No. W2013-01877-CCA-R3-PC  - Filed August 27, 2014**

_____

The Petitioner, Lakeith Humphrey, appeals the Shelby County Criminal Court's denial of post-conviction relief from his conviction for first degree premeditated murder and his sentence of life imprisonment.  On appeal, he argues that trial counsel was ineffective in failing to challenge the legal accuracy of the special jury instruction regarding premeditation given at trial.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN, J., joined.  JEFFREY S. BIVINS, J., Not Participating.

Andrew R. E. Plunk, Memphis, Tennessee, for the Petitioner, Lakeith Humphrey.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Amy P. Weirich, District Attorney General; and David M. Zak, Jr. and Rachel Russell, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

**Facts.**  This court summarized the facts in this case in its opinion on direct appeal:

> On the night of November 28, 2006, the victim in this case, Gina James, was tragically shot and killed through her bedroom window.  The [Petitioner], who had worked in law enforcement, occasionally dated the victim while she was in the process of getting a divorce.  Their relationship was sometimes turbulent; they would periodically break up, and then later get back together.  On at least two occasions, after the victim broke up with the [Petitioner], incidents occurred that caused the victim to briefly reconcile with the

[Petitioner] out of an apparent need for protection. For example, after one break-up, a brick was thrown through the victim's window, and after another break-up, someone fired a gunshot at her car. With his background in law enforcement, the [Petitioner] appeared to offer the victim some degree of protection from an oft-violent world filled with unknown criminals and assailants. Her putative protector, however, was soon unmasked as something else entirely.

On the very night she was killed, witnesses testified that the victim broke up with the [Petitioner] by telephone. Several hours later, family members heard the sound of glass breaking in the victim's bedroom and discovered her, still conscious, lying on the floor in a pool of her own blood. They promptly called 911, requesting an ambulance and the police. Medical personnel arrived and attempted to help the victim, but she died a short time later.

Police arriving on the scene observed bullet holes in the victim's pillows, head board, and bedroom wall. There were corresponding bullet holes through the victim's bedroom window, which indicated that the bullets fired at the victim had been shot from outside that window, angled downward toward the bed. Outside the same window, police found five spent 9mm shell casings. Police also found smudges on the glass of the window about two feet above the bullet holes, consistent with a human face having been pressed against its surface. Police further determined that a person could see through the victim's bedroom blinds by pressing his or her face against the glass in this manner.

Investigating officers interviewed the surviving family members and, upon learning of the [Petitioner]'s prior relationship with the victim, brought him in for questioning. The [Petitioner] claimed to have been at his job at an apartment complex working as a security guard at the time of the shooting and was released. However, the next morning, officers received a phone call from the [Petitioner]'s mother, claiming that the [Petitioner] had told her that he was responsible for the victim's death. Officers arrested the [Petitioner] and brought him in for further questioning.

This time, the [Petitioner] asked to speak to one particular officer–a former childhood friend– alone. He told this officer that his brother had killed the victim. However, when the police brought the [Petitioner]'s brother in for questioning, the brother denied any participation in the crime and gave police

an alibi that was supported by two witnesses. When officers put the [Petitioner] and his brother together, the [Petitioner] again accused his brother of killing the victim. However, a short time afterward, the [Petitioner] admitted that he was in fact the one responsible for her death.

An officer executing a search warrant reviewed computerized video surveillance footage from the [Petitioner]'s job on the night in question. The officer testified that this video footage showed that the [Petitioner] left his work place between 1:44 and 1:50 a.m. (before the shooting), and returned at 3:50 a.m (afterwards). When officers returned two or three days later to take possession of the computerized video footage, they found that it had been destroyed. As best they could determine, an unknown individual had destroyed the computer hard drive containing the video by pouring an unidentified liquid onto it.

Several days later, Ronnie McLemore, a friend of the [Petitioner], contacted the police and told them he had possession of a gun that had been given to him by the [Petitioner] shortly after the time of the shooting. According to Mr. McLemore, the [Petitioner] had told him that his son was coming into town and asked that he hold onto the gun until after his son's visit. Mr. McLemore agreed, took possession of the gun, and locked it in his safe. When he learned of the shooting, he decided to turn the gun over to the police. The TBI tested this gun and determined it to be the murder weapon by matching it both to a bullet removed from the victim's body and to the spent shell casings found outside the victim's window.

State v. Lakeith Humphrey, No. W2009-01367-CCA-R3-CD, 2011 WL 890940, at *1-2 (Tenn. Crim. App. Mar. 15, 2011), perm. app. denied (Tenn. July 15, 2011).

On March 15, 2011, this court affirmed the trial court's judgment. Id. at *1. Specifically, it held that the issue regarding legal inaccuracy of the special jury instruction had been waived and that the instruction did not rise to the level of plain error. Id. at *7. On January 24, 2012, the Petitioner filed a timely post-conviction petition and later filed an amended petition.

**Post-Conviction Hearing.** Appellate counsel testified that he had represented the Petitioner on direct appeal but had not represented the Petitioner at trial. While acknowledging that trial counsel had challenged the special jury instruction at trial and in the motion for new trial, appellate counsel opined that trial counsel had not properly raised this issue because he failed to challenge the legal accuracy of the instruction. Despite this,

appellate counsel argued on appeal that trial counsel had objected to the special jury instruction and that the instruction was not a complete and accurate statement of law. He also asked that the court review the special jury instruction for plain error. Appellate counsel said that despite his efforts to raise this issue on direct appeal, the Tennessee Court of Criminal Appeals held that trial counsel had waived the issue after failing to object to the legal accuracy of the special jury instruction and after conceding that the instruction was an accurate statement of the law. The court also held that the issue did not rise to the level of plain error. Appellate counsel acknowledged that the court could have reversed the case but chose not to do so, opting instead to give a warning against using similar jury instructions in the future. He said that because the court determined that the issue regarding the special jury instruction had been waived, the appellate court never reviewed the issue on its merits.

Appellate counsel stated that the case of State v. Brandon Compton, No. E2005-014919-CCA-R3-CD, 2006 WL 2924992 (Tenn. Crim. App. Oct. 13, 2006), had been decided at the time of the Petitioner's trial and that he heavily relied on it in preparing the Petitioner's direct appeal. Just as in Brandon Compton, appellate counsel argued on appeal that the special jury instruction did not include the independent body of law explaining some of the factors supporting premeditation and that the instruction came very close to violating the constitutional prohibition against trial courts commenting on the evidence.

Appellate counsel asserted that trial counsel's failure to properly challenge the special jury instruction prevented him from appropriately arguing the issue on direct appeal and precluded the Tennessee Court of Criminal Appeals from reviewing the issue. Appellate counsel opined, "[I]f the objection [at trial] had been made differently, the Court of Appeals [o]pinion would have been different." Neither trial counsel nor the Petitioner testified at the post-conviction hearing.

Following the evidentiary hearing, the post-conviction court denied relief, holding that the Petitioner had failed to establish that the Petitioner was prejudiced by trial counsel's representation. Specifically, the court held that "[i]n light of the overwhelming evidence of premeditation in this case, . . . the jury's guilty verdict was 'surely unattributable' to the erroneous jury instruction."

## ANALYSIS

The Petitioner argues that the post-conviction court erred in determining that trial counsel did not provide ineffective assistance of counsel. He asserts that trial counsel's failure to challenge the legal accuracy of the special jury instruction on premeditation was deficient because it led to an instruction that misstated the element of premeditation and that this deficiency prejudiced his case by adversely affecting the outcome of his trial and appeal.

Because the Petitioner has failed to establish that he was prejudiced by trial counsel's representation, the judgment of the post-conviction court is affirmed.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted), see Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Vaughn, 202 S.W.3d at 115 (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010) (citing Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984);

Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

At the Petitioner's trial, the State requested that the trial court provide the jury with a special jury instruction on the issue of premeditation. Lakeith Humphrey, 2011 WL 890940, at *4. After overruling the defense's objection, the court provided the following instruction:

> The court further charges you that the elements of premeditation may be inferred from the circumstances of the killing. The element of premeditation is a factual question to be determined by the jury from all the circumstances surrounding the killing. Several circumstances may be indicative of premeditation, including declarations of the intent to kill, procurement of a weapon, the use of a deadly weapon upon an unarmed victim, the fact that the killing was particularly cruel, infliction of multiple wounds, the making of preparations before the killing for the purpose of concealing the crime, destruction or secretion of evidence and calmness immediately after the killing. A jury is not limited to any specific evidence in finding or inferring premeditation, but it may be established by any evidence from which a rational jury may infer that the killing occurred after the exercise of reflection and judgment. In addition to these factors, the establishment of the motive for the killing is yet another factor from which the jury may infer premeditation.

Id. Pursuant to this court's opinion on direct appeal, the defense did "not challenge the legal accuracy of the instruction" and "conceded that the special instruction was the language of the presently-existing law in Tennessee at the time it was issued[.]" Id. at *5. Instead, the defense claimed that the special instruction "was unnecessary, unfair, and prejudicial . . .

-6-

because it provided a 'roadmap' that was relied on by the prosecution in its closing argument." Id.

In his post-conviction appeal, the Petitioner argues that trial counsel's failure to properly challenge the special jury instruction was deficient and prejudicial. The State contends that the error regarding the special jury instruction on premeditation was harmless beyond a reasonable doubt because the jury's guilty verdict was "surely unattributable" to the instruction. We agree with the State.

The right to trial by jury is guaranteed by the United States and Tennessee Constitutions. U.S. Const. amend. VI; Tenn. Const. art. I, § 6. "[I]t follows that a defendant has a right to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." State v. Garrison, 40 S.W.3d 426, 432 (Tenn. 2000) (citing State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990)). Accordingly, trial courts have a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986) (citing State v. Thompson, 519 S.W.2d 789, 792 (Tenn. 1975)). When reviewing challenged jury instructions, we must look at "the charge as a whole in determining whether prejudicial error has been committed." In re Estate of Elam, 738 S.W.2d 169, 174 (Tenn. 1987) (citation omitted); see State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). "'An instruction should be considered prejudicially erroneous only if the jury charge, when read as a whole, fails to fairly submit the legal issues or misleads the jury as to the applicable law.'" State v. Majors, 318 S.W.3d 850, 864-65 (Tenn. 2010) (quoting State v. Faulkner, 154 S.W.3d 48, 58 (Tenn. 2005)); see State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997) (citing State v. Forbes, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995); Graham v. State, 547 S.W.2d 531, 544 (Tenn. 1977)). "The misstatement of an element in jury instructions is subject to constitutional harmless error analysis." Faulkner, 154 S.W.3d at 60 (citing Pope v. Illinois, 481 U.S. 497, 501-03 (1987)).

We conclude the Petitioner has failed to establish that he was prejudiced by trial counsel's representation. In State v. Vernon Motley, No. W2010-01989-CCA-R3-CD, 2012 WL 1080479, at *4 (Tenn. Crim. App. Mar. 29, 2012), perm. app. denied (Tenn. Aug. 16, 2012), the trial court gave a special jury instruction regarding premeditation that was identical to the one given in the Petitioner's case. This court concluded that the jury's guilty verdict was "surely unattributable" to the erroneous instruction because the evidence of premeditation was overwhelming:

> After review, we are convinced that the proof of premeditation was overwhelming in this case. Shaka Jones testified that, when the defendant found out she was pregnant, he threatened to kill her, her baby, and the victim.

She said that she avoided contact with the defendant and changed residences because of the defendant's threats. She said that she also avoided the victim because she took the defendant's threats seriously. Torre Smith testified that he saw the defendant run toward the victim, saying, "I've been waiting to catch you" and shoot at him as he was running away. There was no evidence that the victim was armed. After the crime, the defendant eluded apprehension for fourteen months, thus effectively secreting any evidence. In light of this evidence of premeditation, we conclude that the jury's guilty verdict was "surely unattributable" to the erroneous jury instruction.

Id. at *6. As in Vernon Motley, the evidence of premeditation in the Petitioner's case is overwhelming.

Moreover, the Petitioner's reliance on State v. Brandon Compton and State v. Hollis is misplaced. In Brandon Compton, 2006 WL 2924992, at *11, this court vacated the defendant's convictions for first degree murder and remanded the case for entry of convictions for second degree murder after concluding that the evidence was insufficient to establish the element of premeditation and that the special jury instruction on premeditation, which differed slightly from the instruction given in the Petitioner's case, was erroneous. It held that there was insufficient proof of premeditation to sustain the defendant's convictions for first degree premeditated murder:

Here, nothing in the record indicates that the Appellant was sufficiently "free from excitement and passion" at the time the intent to kill was formed. It is undisputed that the Appellant's hostility was triggered by the victims' attempted theft of $1,000 in illicit drugs belonging to the Appellant. The entire event was over in seconds. If the purpose to kill is formed in passion and executed before the passion cools, it is murder in the second degree, not murder in the first degree. Thus, the absence of planning, the absence of prior hostility, and the circumstances surrounding the manner of the killings all mitigate against the presence of premeditation. By all accounts, the proof in the record reveals that the intent to kill was formed in passion following the theft of the Appellant's marijuana. The shooting proceeded to a conclusion without any intervening or dispassionate reflection. Absent the element of premeditation, the Appellant's conviction for first degree murder cannot stand.

Id. at *5 (internal citations omitted). The trial court gave the following special jury instruction regarding premeditation:

The elements of premeditation and deliberation are questions for the jury that may be established by proof of the circumstances surrounding the killing. There are several factors that tend to support the existence of these elements which include: declarations by the defendant of an intent to kill, evidence of the procurement of a weapon, the use of a deadly weapon upon an unarmed victim, the particular cruelty of the killing, infliction of multiple wounds, preparation before the killing for concealment of the crime, destruction or secretion of the evidence of the murder, and calmness immediately after the killing.

Id. at *6 (footnote omitted). This court held that the special jury instruction in Brandon Compton was erroneous because it failed to completely and accurately instruct the jury on the element of premeditation:

[W]hile these factors provided to the jury by the special instruction recite those factors enumerated by the Tennessee Supreme Court in Nichols and Jackson as appropriate factors for consideration as to the presence of premeditation at trial, case law has expounded upon their application and has concluded that certain of these factors are insufficient in and of themselves to warrant a finding of premeditation. Moreover, the form of the special instruction and the specific language, "There are several factors that tend to support the existence of these elements which includes . . . [,]" comes perilously close to the constitutional prohibition of the trial judge commenting upon the evidence. See Tenn. Const. art. VI, § 9. After review, we conclude that instructing the jury with regard to the factors, without also instructing on their expanded application, could have misled the jury as to the applicable law. Thus, the jury instruction, as given, failed to give a complete and accurate instruction of the applicable law.

Id. at *7.

In State v. Hollis, 342 S.W.3d 43, 45 (Tenn. Crim. App. 2011), this court reversed the defendant's conviction for first degree premeditated murder and remanded the case for a new trial, holding that although the evidence was sufficient to sustain the element of premeditation, the trial court had committed reversible error by commenting on the evidence and providing an incomplete statement of the law in its special jury instruction on premeditation, which differed slightly from the one given in the Petitioner's case. The trial court provided the following special jury instruction regarding premeditation:

Factors which might, if proven, tend to indicate the existence of premeditation include declarations previously made by a defendant of an intent to kill, evidence of procurement of a weapon by a defendant prior to a killing, use of a deadly weapon upon an unarmed victim, particular cruelty of a killing, infliction of multiple wounds, destruction or secretion of evidence of a killing and a defendant's calmness immediately after a killing. Should you find evidence of any such factor, you should give it such weight and value as you think it deserves along with all the other evidence in the case.

Id. at 49. The court concluded that the special instruction "contained an incomplete statement of the law [that was] misleading to the jury" and "constituted an impermissible comment by the trial court upon the evidence." Id. at 51. In response to the trial court's assertion that the factors in the instruction came directly from the Tennessee Supreme Court's opinions on premeditation, the court noted that language in the special instruction was "developed in the context of our supreme court's evaluation of the sufficiency of the evidence in first degree murder cases to determine whether there was sufficient proof, from all evidence presented, by which a rational jury could have reasonably inferred premeditation." Id. It held that because the special instruction misstated the element of premeditation, it fell within the category of a non-structural constitutional error requiring reversal of the conviction unless the error was harmless beyond a reasonable doubt. Id. at *51-52 (citing State v. Paul Wallace Dinwiddie, Jr., No. E2009-01752-CCA-R3-CD, 2010 WL 2889098, at *10 (Tenn. Crim. App. July 23, 2010)). Consequently, this court held that the appropriate inquiry was not whether a guilty verdict surely would have been rendered in a trial without the error but "'whether the guilty verdict actually rendered in this trial was surely unattributable to error.'" Id. at 52 (quoting Sullivan v. Louisiana, 508 U.S. 275, 279 (1993)). The court ultimately concluded, "[T]he proof of premeditation, although sufficient to sustain the jury's verdict, was not overwhelming, and we are simply unable to conclude that the erroneous jury instruction did not have a 'substantial and injurious effect or influence in determining the jury's verdict.'" Id. at 52 (quoting Hedgepeth v. Pulido, 555 U.S. 57, 58 (2008)).

Unlike Brandon Compton and Hollis, the proof of premeditation in the Petitioner's case was overwhelming. On direct appeal, this court concluded that the proof presented at trial was more than sufficient to support a finding of premeditation in the Petitioner's case:

Our review of the record amply supports the premeditation found by the jury; indeed, there is evidence to suggest that almost all of the factors suggested in Bland and Gentry are present. Physical evidence and testimony showed that the victim was unarmed and was slain by a firearm wielded by the defendant. Evidence of cruelty also exists–the victim was in her bed at the

time of the killing and was shot in the dark through her own bedroom window while her family members were present in the house. The victim's neighbor, Roderick Bowen, testified that the defendant had made prior threats against the victim, including "[b]itch, I'll kill you," and "I'll make a crime scene out of this." There was also evidence of planning before the crime and concealment efforts afterwards. The defendant's confession combined with security footage from his place of employment support a conclusion that the defendant attempted to set up an alibi prior to the killing by going to work, leaving his place of employment to kill the victim, and then returning to work as though nothing had happened. Additional evidence of the defendant's concealment activities includes the testimony of his friend Ronnie McLemore, who testified that the defendant attempted to hide the murder weapon by giving it to him following the murder under the pretext of needing to keep it away from his son. Although evidence of many of these factors, standing alone, might have sufficed, taken together, the evidence presented at trial was fully sufficient to support the jury's finding of premeditation.

Lakeith Humphrey, 2011 WL 890940, at *3. Therefore, we conclude that the guilty verdict was "surely unattributable" to the special jury instruction on premeditation and that the Petitioner was not prejudiced by trial counsel's representation. Accordingly, we affirm the judgment of the post-conviction court.

## CONCLUSION

The judgment of the post-conviction court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE